No. 161336, John J. Hynes, Jr. et al. v. Commissioner of Internal Revenue Mr. Burke Good morning, Madam Attorney. I would, at the outset, can I have a three-minute rebuttal? Yes The matter before the Court relates to perhaps three issues. It all generates from the ownership of Mr. Hynes, Mr. Hynes' ownership of four motels on Cape Cod. The ownership history appears to be pretty straightforward. The bookkeeping is anything but that. The motels were all held by corporate entities. There were two sets of books for separate motels. Nothing in those books was related to Mr. Hynes. However... Could you please get to the Tax Court opinion and why you believe it's a reversible error? Oh, absolutely. I just want to give a few facts. Believe me, we've read the briefs. Thank you, Madam Attorney. I appreciate that. The Tax Court is an error, and I'll start in reverse order to the way I drafted the brief. The Tax Court's error begins or ends with the notion that the taxpayer should be sanctioned for following what the Internal Revenue Service has told them to do. In the past, what has happened here is that in the prior years, the taxpayer used the exact same method of accounting for income and expenses. In the Tax Court, there was back and forth as to how long the prior audit was. Counsel, just putting aside the issue of the penalty, just in terms of the judgment that your client had underpinned the taxes, what was the basis for arguing that the IRS was precluded from making that determination of an underpayment? Because in prior years, your argument, it had examined and apparently approved tax returns that revealed a similar approach to the payment of taxes. Isn't the law clear that each year is to be evaluated separately? And simply because in prior years, the IRS may not have noted what they now find problematic. They're not precluded from determining that there are now underpayments for these years. I haven't argued that either in the Tax Court or here. I fully accept the notion that the... Then what is your argument? Well, the argument being is what do we have here? To get back to the income issue, I believe you're raising issues as to the income. What evidence do we have as an increase to income? Only evidence is a statement by the taxpayer in his tax return which shows that he had made an accounting entry, simply an accounting entry to offset or balance off the expenses he claimed on a Schedule C, which is a proprietorship schedule on his personal return. There is no evidence, nothing in the record, that would establish that the IRS did anything to prove his income or that there was any increase to his personal wealth because of this accounting entry. This is unusual. This is an unusual case, an unusual fact pattern. What you have here is income being received by corporations, expenses being paid by corporations, and a long-standing history of reporting some of those income and some of those expenses on a personal return or a proprietorship schedule of personal return. Well, that of course is immediately problematic as the IRS points out. That's highly irregular. Your Honor, I haven't... It is highly irregular. I'm not disputing that. I didn't dispute that in the tax code and I'm not going to dispute it here. Highly unusual fact pattern. The most unusual part of the fact pattern is that the IRS said it was fine. But in any event, just to get back to the question of income, there's no evidence that this gentleman's wealth was in any way increased. To have income, you need more than just some accounting entry. The Internal Revenue Manual, which doesn't give the taxpayers any rights, of course, but it does provide the general concept of what an audit is supposed to encompass, doesn't support this. Two of the bases for the tax court to have rejected his testimony that he actually received nothing of value as management fees is that he had signed under penalty of perjury his personal returns, which reported the receipt of fees. Right. And second, that he had given instruction to the return preparer to claim a deduction for management fees paid to John and then the matter of the absence of a personal bank account. Why isn't any combination of those sufficient to support the tax court's rejection of his testimony? It's not sufficient because there is no income. All it is is an accounting entry. What the tax court said is that he signed a tax return under penalties of perjury. All tax returns are signed under penalties of perjury. Yes, but it reported that he had received fees and then he testifies he doesn't receive fees. And both of these statements are under oath. True. So, accepting that both of these statements are under oath, what evidence is there to quote-unquote break the tie? His statement under oath for his tax return was that he did what he understood he was supposed to do based on prior years. That's just an understanding. That's a conceptual framework which was established by the Internal Revenue Service. So, it's an unusual case. I agree with that. But his testimony, just by filing a tax return and taking a position that it's income, it doesn't bind either Mr. Hines or the Internal Revenue Service. If Mr. Hines claimed what's used to be contrary arguments, if Mr. Hines put a million dollars' worth of deductions on his tax return and just said, this is a deduction, the Internal Revenue Service looks into it as they should. The issue here is if it's an income issue and the service has an obligation to look into it and they don't, where do we stand? By the way, Mr. Hines didn't entirely say it was nothing. He said, as part of the burden of proof argument here, I did receive something, but not the full management fee. So, what we have here is a record which is unusual, very unusual. I've been doing this for a long time. This is unusual. I'm saying this is unusual. This is unusual. The question that may be most unusual is the proposition that you have the taxpayer signing a return under oath saying that I have received income in the form of these management fees. And then at a hearing, he says that's really just a fiction. But somehow, having made those incompatible statements under oath, the IRS now has the burden of proof to show by some documentary form that what he's saying at trial is true, that he didn't really get those fees. I mean, that strikes me as frankly a bizarre proposition of law. It would be, if you take it from the taxpayer's position, there is, he is saying what he understands to be correct. He could be dead wrong. Matter of fact, I believe he was dead wrong. I believe the IRS was dead wrong in the first examination. He was dead wrong. The fact that he made an error illegally, let's step aside for one second. It keeps sounding like you're almost admitting that he owed the taxes, but you're saying he shouldn't be penalized because he had a good faith understanding, even though he made a statement under oath on his returns, which is diametrically opposed to the testimony he gave. How could that be in good faith? Well, the good faith here, let me answer this. There's two questions, I believe. If I don't have it right, you just kind of let me know. I think there's two questions, and let me know if I've got it wrong. The first question is the income is an accounting entry. That's what he understood it to be. They're not diametrically opposed. All he's saying in his tax return is this is what I think is right. Is that reasonable cause to say that? The answer is absolutely, because he relied on what he was told by the IRS. So what we have here is reasonable cause. This is a technical issue. You have two CPAs, and you have two revenue agents involved here. Are you saying he did get the fees or he didn't get the fees? He didn't get all of it. He gets some of it. He didn't get all of it.  What he said is that he put in gross revenue. If I'm the IRS and I don't know anything, and I just read the filing, he'll say he got the fees. You don't deny that. Well, the IRS is supposed to know more than that. But the idea being that if it says in his tax return he has the fees and he explains to the IRS the assistant offset to the expenses, the IRS is in many ways the ultimate determining factor here. They have to have an understanding that taxpayers make out. The basic position is the government was not entitled to rely on his own return as the basis for concluding he got the fees. Now we're saying that the return says he got the fees. Not solely. Not when they have information. I just want to get the argument. The argument is he says on his form, I got fees. The IRS is now saying, well, since you said you got the fees, we're going to treat it like you did. You say the government, normally that's fine for them to do it, but somehow this is a special case because they've been told that that is, it was like a Scribner's error or something, right? To the form, the form just can't, you know, the IRS is supposed to know that that form can't mean what it says because they've now been informed enough to lead them to think it doesn't. So you say they've got to prove out now why they're relying on the form. Is that the idea? The burden here. We say yes. It's not the way I would say it. I appreciate your position. It's not the way I would say it. My argument is being when the IRS understands how the taxpayer is reporting this based on an understanding and he tells them what to do, what is their duty here? The manual says they have to look into it. That's because of what happened in the prior years? That's right. So because of what they did in the prior years, they were on notice that they should have described what he said in the text. During the current year, they were also aware of what was going on because they allowed some expenses, which makes no sense either. Well, despite what you said in response to my first question, you are arguing that the IRS was limited in its assessment of an underpainted in the tax years of issue because of the way it handled its tax returns in the early years? Aren't you arguing that? I'm definitely not. I'm making a finer argument than that. In my mind, maybe I'm not convincing anyone, but in my mind it's a more refined argument that the prior year stands on its own. It can't be forgotten. Can you wrap it up? You've raised this argument. I'm trying to wrap it up. I believe you've already made the argument to us. Are you just going to repeat it again? No, that's fine. I'm trying to answer the judge's question. Thank you. Good morning. My name is Cheryl Wong, foreign commissioner. I want to answer very briefly Mr. Burke's arguments regarding the tax efficiency and then I'll address the penalties. Mr. Burke's argument just now, he said that there's no evidence that there was any accession to wealth by Mr. Hines. Well, I think that this constitutes the burden of proof here and the burden-shifting scheme here a little bit. The tax court made the factual determination that there was that Mr. Hines's uncorroborated testimony, which contradicts his own tax returns and his corporation's tax returns, were not sufficient even to prove the commissioner's determination was, in the first instance, arbitrary and excessive because relying on the taxpayer's own reporting, in the first instance, is really the most reasonable thing to do. And when Mr. Hines couldn't even meet that lower burden, the tax court naturally decided that he could not meet the higher burden of persuasion either of his burden of proof, which remained with him. Mr. Burke also mentioned the fact that, while the record seems to show that the IRS did not look very hard into the amount of income that Mr. Hines reported in the years at issue, that does not shift the burden of proof. And also, it is irrelevant in determining the tax efficiency here because this is not a case about how good a job or how bad a job the IRS did. The tax court review wasn't being over-proceeding, and if Mr. Hines had better evidence than his own uncorroborated testimony, again, to show what his income actually was, he had every chance to bring it to the attention of the tax court. He had a chance before he even went into the tax court to show the IRS agent what it was. And the last point with regards to the tax efficiency is that the IRS's audit of the prior year returns. Again, here, the tax court heard the evidence and made, again, a factual determination that there was not the kind of audit that could be reasonably relied on in good faith. And also, the commissioner's conclusions in prior years did not affect one's conclusions throughout buying him in other years. Counsel, when the IRS sends a standard letter referred to an examination, I guess that is the word that is used in the letter that they sent in response, I guess, to the late filed tax returns in those earlier years. What is a taxpayer supposed to understand from that language in examination? The IRS seems to take the position, well, we say that, but in fact, we don't really examine them at all. It's simply a very perfunctory act in sending out that letter. Isn't there something misleading about that language? Yes, I recognize that that letter does contain an examination language, and under the right circumstances, it could lead to a misunderstanding by the taxpayer of the commissioner's position. However, with regards to the tax efficiency, even if the commissioner had made a mistake in prior years, it does not bind him in subsequent years. Now, with regards to the penalty, if your honor is interested, reliance on whether it's an IRS letter or whether it's on your accountant, it has to be reasonable, right? As was said in Kaufman v. Commissioner last year, just because you got an appraisal, it doesn't mean that it's not the same thing as reasonable reliance on that appraisal. So same thing here, just because you got a closing letter referencing an examination, it's not the same thing as relying on that examination, relying on that letter in good faith. And it doesn't mean that you can put your blinders on and put your reason aside, especially when you compare this case with Kaufman. That was an appraisal that called for some sort of judgment at the level of sophistication. Here it's whether you're telling the truth on your tax return, whether you got the money, whether you should report your corporate expenses on your individual returns. It calls for a much lower level of a judgment, if at all. So relying on that letter, I would think it's difficult to say that it's reasonable or in good faith. And I would like to... I'm just worried there may be something a little bit circular in the argument that you're making, but I could be confused. You relied on the return for the evidence that he actually got the fees. Yes. Anything else? The fact that he was associated with the business. And that is enough to establish a foundation for the assessment, which the taxpayer has to approve. Are you including the third point that he gave his instructions to his accountant to... That's also a piece of evidence. Okay. So it isn't merely his having signed the return that includes the fees. There's the address. That's correct. Okay. That addresses, I think, the circularity problem, because if it was just the return itself, and then you say, well, it has to be reasonable, I take it the argument that we're being told is, well, he had reason to believe that even though he was putting it on that return, since he knew he wasn't getting the fees and there's no indication he was getting the fees, to say, you know, it was unreasonable to him. His contention is, well, I was being led to believe that reporting it this way was fine, even though I wasn't getting the fees. Isn't that his argument? Are you addressing the penalty question? Yes. Okay. Yes, that's what he's saying. Right. So what's the answer to that? Is the answer to that the reason it's not reasonable is because the IRS actually has evidence in the record that suggests he really was getting the fees, and if that's the case, then why would he think he didn't have to report it? The answer is not that the IRS has evidence that he actually got the fees. The record does not reflect that. Our answer is that it doesn't make sense for, if you didn't get the money, to report that you got the money. Well, but he's saying that that was going on for a while, and I was getting examination letters saying that's fine. So now you're penalizing me after the fact, after you let me down the road thinking doing it this way was fine, and if you had some evidence that it was unreasonable for him to think he could do it that way, that's one thing. But if you don't have any evidence, what's wrong with his argument? Well, the factual determination that the task force made after taking into account that letter, as well as the countervailing evidence that was detailed in our brief, including the conflicting testimony between the IRS's documentary evidence and Mr. Hines' testimony as to how the examination went. Excuse me. Yes. I thought the credibility assessment of his testimony was part of the mix here as to the penalty. Yes, and that's what they... And this court is not supposed to disagree with that type of assessment by the tax court. Okay. So I must have misunderstood your question. Did I? I'm not sure. I guess I'm just trying to figure out what you're... beyond the return itself for the penalty to show that it was unreasonable for him to have acted as he did. Common sense. Because if you didn't get that money, you should report it. You know that there's a... Okay, and then I take it the answer back that he gives is, fair enough if you didn't know anything more, but here I got these examination letters, so it was commonsensical for me to think I was doing something that was fine for me to do, and then the answer to that is, well, then that's just a credibility determination. Because there was nothing to rely on. There was nothing worth relying on with just that letter S in Stewart. And that's the district court's finding. Yes. The mixing of the personal and the corporate, that is, taking, if I understand the situation correctly, sort of corporate expenses and then using them as deductions on a personal return, was that approach also being used in these prior tax years? I mean, the tax court comments very critically on that, and I think uses that as evidence of a lack of good faith. Was that practice also present in those early years, that mainly with the corporate and personal? According to Mr. Hines' testimony, yes, and the tax returns themselves also show that pattern. And the tax court did comment critically on that in supporting the penalty assessment, is that correct? Critically, as in criticizing that practice. As evidence of a lack of good faith. I may be wrong. Yeah, I don't recall that in particular. I'll look at that again. If there are no further questions from the court, then thank you. I'll be brief. I believe I heard earlier that the Department of Justice has admitted that the record doesn't show the receipt of any income by Mr. Hines. In answering the more recent questions as to, well, does the taxpayer have reasonable cause, there's no dispute in the record, at least from what I've heard and from what I know of the record, that this has been going on for a very long time. They use the tax court's term.  Well, the thing is that the issue here is that he had been, quote, quote, blessed. Then that goes back to the caveat with Judge Lopez at the beginning, which is your argument hinges that. I understand it's a more refined version of a pure estoppel. No, I'm not saying that. But you're saying that for purposes of determining how credible the taxpayer's account of what happened is, it matters that he was getting examination letters that were blessing him. Right, blessing him. But the issue is that in terms of not credibility is that the facts are undisputed is that this has been going on for a very long time. The IRS blessed him. And how would a taxpayer who's already retained two accounts know to do, have any idea, any idea, that he was doing anything wrong? Well, I guess one question, why would he possibly think he was doing something right? Because the IRS told him he was. Well, maybe he's happy they didn't notice. But why would that lead us to conclude that he thought what he was doing was right? There's no evidence to support this guy's nefarious. I mean, I don't appreciate that. Taxpayers are taxpayers. The IRS heard him. They actually heard his testimony at the tax court. Right. And partly they don't believe it because of the various objective factors. We're not supposed to interfere with those judgments unless you can establish the proposition that no reasonable tax court judge could possibly have reached these conclusions. And you can't do that. Well, I believe the facts show that, well, of course I'm here to disagree, that the tax court's decision is in error as that all the evidence, all of it, shows that the taxpayer relied on what the IRS said. The tax returns were prepared that way. This is what I think the tax court said. Except for what he did. He didn't do anything. Yes, he did. All he did was follow what he was told to do. Well, that's the issue. Is that what he was doing? Or was he doing something that a common sense person would know is not something you can do under the code, and then it was not caught? And for us, as the case comes to us, there's a finding below that he was doing something that no reasonable person would think you could do, and he wasn't caught for it. And then you have to show why that's not a plausible account of the record. But I don't see what you're relying on to say that other than you just keep saying he was relying on the examination. Well, if we could just look at the hard evidence. The tax returns show this. All years at issue, they show the exact same corner. That's not testimony. That's hard documentary evidence. I know you don't want to hear my answer. Thank you. Thank you. You've had your rebuttal time.